No. 20,648.

ARTHUR J. KANE, JR., *v.* BARBARA O. KANE.
(391 P. [2d] 361)

Decided April 13, 1964.

Mr. ARTHUR J. KANE, JR., pro se.

Messrs. MASON, REULER and PEEK, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS writ of error is a companion case to No. 20833 involving the same parties and which latter case they now have moved this court to dismiss. Therefore, concurrently with the announcement of the opinion in this case, No. 20833 is ordered dismissed forthwith.

This retained action relates to numerous questions concerning various orders stemming from a divorce action filed July 30, 1962, by Barbara O. Kane, wife of Arthur J. Kane, Jr., a licensed attorney and the plaintiff in error here. We will refer to the parties either by name or as husband and wife as appropriate herein.

Barbara's complaint alleged that the parties were married in Minnesota on August 29, 1950; that they have four minor children and that she is a fit and proper person to have their custody. She alleged physical and

mental cruelty as her grounds and sought a divorce, a property settlement, temporary and permanent alimony and child support, attorney's fees and costs. On March 15, 1963, after a long and bitter preliminary battle with her husband and by virtue of a jury trial, Barbara was finally awarded a divorce. From the start, however, she had been awarded temporary custody of the four children as well as $460.00 per month child support. Arthur was awarded limited visiting rights which have long since expired. The parties, however, during part of the period since 1962 apparently have, from time to time, worked out other occasional visits or sought special court permission for visits; and, on at least one occasion, Arthur visited the family home in violation of a restraining order.

Shortly after the trial court entered its child support order, Arthur sought a stay thereof in this court. On his showing here that his *net* income at the time was only $500.00 per month, we stayed all proceedings until our further order and ordered him to pay $200.00 per month until the dispute was at issue and we could determine the matter on writ of error.

The following alleged errors are urged by Arthur on this writ of error:

I. Did the trial court err in awarding $460.00 per month as temporary child support;

II. Did the trial court err regarding its order on custody and visitation rights;

III. Should and could the trial court have ordered psychiatric examinations of both the parties in this domestic relations dispute;

IV. Did the trial court err in denying the husband's motion for change of venue because of alleged prejudice;

V. Did the trial court err in dividing certain personal property between the parties prior to a full hearing on a property settlement; and,

VI. Did the trial court err in assessing the wife's preliminary attorney's fees to the husband?

We will consider these grounds seriatim.

I.

As to the child support payments, Barbara sought $889.00 per month and the court, after extended hearings, awarded her $460.00.

A full review of the record discloses that at that time the only certain evidence was that Arthur had either $500.00 or $520.00 *net* per month from his law practice and business ventures. Also, it is revealed that the parties had been and were then still living far beyond their means and often lived on borrowed money. The trial court, in making its award, stated that if the husband didn't make enough he could borrow still more money so that in effect the wife and children could continue to live beyond the family's means. The court itself stated several times that it wished it could reduce the payments, but if it did it didn't know how the wife and children would get along.

Unfortunately, as worthy as that thought may be with an expensive home to support pending its sale, (with payments of $303.00 per month) that is not the law. The applicable rule, which the court should have applied, is the father's ability to pay weighed against the reasonable needs of his children.

Modern society requires spouses to accept legal separations in as civil and decent a manner as possible, and it requires fathers to support their children as best they can. It does not, however, require a father in poor or moderate circumstances to support children on a higher scale just because the family once so lived or because the mother may desire to so live after the divorce or if she herself can, or the children's estates can, afford a higher scale.

We find therefore that at the time this particular support order was entered it was erroneous.

II.

We turn next to the subject of custody and visiting rights.

■ Here the trial judge heard the evidence and considered *the needs of the children.* Usually, it is both natural and right to award the custody of small children to the mother where she is a fit person. Though Arthur has asserted that emotional stress affected Barbara's ability in this regard, we are bound by the trial court's contrary determination, absent any showing of abuse of discretion — and we find none in this record. *Wiederspahn v. Wiederspahn,* 146 Colo. 214, 361 P. (2d) 125 (1961). We therefore affirm the custody part of the trial court's order.

■ As to the visiting rights, we also find there was no abuse of discretion. Arthur's present home is in Aspen, his former wife's home is in the Denver area. It was for the trial court to determine how often the minor children could be seen by their father and transported on occasion as far as Aspen for other visits.

■ Two erroneous concepts, however, are urged here on behalf of Barbara. The first one is that a trial court can punish a father, delinquent in his child support payments through no fault of his own, by denying him visitation rights until he becomes current in his payments; and, secondly, the corollary proposition that future support payments can not be reduced as long as a husband is in default, even though a proper showing can be made of inability to pay. Needless to say both of these concepts are not the law in Colorado. We can conceive of no greater cause for disharmony in human or family relationships than the application of such vindictive rules. And, we can conceive of nothing more apt to make a father stubborn to the point of contempt or abandonment than their application. Here the trial court refused to apply such contentions as do we.

III.

■ As to the power of the trial court to order a psychiatric examination of the parties in a domestic relations case the question must be answered in the affirmative. And, this is true even though not provided

for in *Colo. R. Civ. P.* 35(a). We believe that where matters such as custody of children are in dispute in a divorce or separation action and the mental stability of either or both of the parents is seriously challenged a psychiatric examination may well provide a key to a wise determination of custody, a determination, the sole aim of which must be the best interests of the children. See: *Nelson v. Grissom,* 152 Colo. 502, 382 P. (2d) 991 (1963). In the instant case, however, we are not convinced that the record discloses any evidence necessitating a forced psychiatric examination of the wife, as insisted upon by the husband (as distinguished from her few voluntary talks with her husband's own psychiatrist in regard to the marriage counseling attempted by the parties); thus we find no abuse of discretion in the trial court's refusal to so order.

IV.

One of the husband's most strenuously argued grounds, because of the amount of the support order and rulings on various motions, is that the last trial judge in this action is gravely prejudiced against Arthur and that he did not receive a fair trial and can not receive a fair hearing on any remand. Arthur wants this court to order further hearings to be held by a judge or judges who do not reside in either Adams or Arapahoe Counties where the action has heretofore been heard by at least three different judges.

We have examined the record and can not agree with Arthur. In fact, in view of the emotional complexities of the parties involved in this case, it appears that instead of being charged with prejudice the trial judge should be commended for his patience and fairness.

V.

We find no merit to the charge that the trial court prematurely and improperly divided certain property. As we read 1960 Colo. Perm. Supp., C.R.S. '53, 46-1-5 (f), it does not preclude a temporary division

of such property as household goods, family vehicles, and even use of the home itself pending a final property division after the divorce and after a proper hearing. Obviously, someone has to have the possession and use of such property pending a final determination and the trial court, in the absence of a friendly division by the parties themselves, must be the one to adjudicate the matter. Since certain denied motions and subpoenas duces tecum by the husband were directed to the discovery of the wife's financial assets which were not yet in issue, no error occurred, for that matter is a part of the property division question yet to be heard and determined.

VI.

In connection with the award to the wife of attorney's fees our study of the record convinces us that the trial court was correct in assessing preliminary attorney's fees against Arthur and that no abuse of discretion occurred in so doing. 1960 Colo. Perm. Supp., C.R.S. '53, 46-1-5. True it is that Barbara appears to be possessed of an estate of some size, although there is a question yet to be determined as to the nature of her assets and their merchantability. On a final property settlement, however, if it develops that the wife has ample assets of her own to pay for the services of her attorneys, then any additional fees, including the services of counsel on this writ of error and other related matters, may or may not be awarded against the husband as the court determines. *Henderson v. Henderson,* 104 Colo. 325, 90 P. (2d) 968 (1939) relied upon by Arthur is not applicable to this factual situation.

CONCLUSION

The orders and rulings of the trial court before us are affirmed in all particulars except as to the amount of child support. As to the latter the judgment is reversed with directions to vacate the award of $460.00 per month and to hold a new hearing to determine a

proper order of child support based on Arthur's ability to pay and the needs of his children.

It is so ordered.

MR. JUSTICE HALL not participating.