24CA1172 Marriage of Keyes 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1172
Summit County District Court No. 13DR30007
Honorable Reed W. Owens, Judge

---

In re the Marriage of

Marion A. Keyes,

Appellant,

and

Laurie A. Keyes n/k/a Laurie A. Collins,

Appellee.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Marion A. Keyes, Buena Vista, Colorado, for Appellant

Laurie A. Keyse, Pro se

¶ 1    In this post-dissolution of marriage case involving Marion A. Keyes (father) and Laurie A. Keyes, now known as Laurie A. Collins (mother), father appeals the district court's order granting mother's motion to modify parenting time. We affirm.

## I.    Relevant Facts

¶ 2    The parties' thirteen-year marriage, which resulted in four children, ended in 2013. The court named mother the children's primary residential parent. Father's parenting time included three weekends a month during the school year, alternating weeks in the summer, and rotating holidays.

¶ 3    In 2023, mother moved to modify parenting time for the two youngest children, M.K. and K.K., (modification motion). Among other things, mother proposed that father's parenting time consist of the first weekend of each month, with the provision that the children could opt out of the visit for "any reason." The district court set an evidentiary hearing for March 14, 2024.

¶ 4    Meanwhile, the district court appointed a child and family investigator (CFI) to investigate and make recommendations regarding mother's modification motion.

¶ 5    Father moved to vacate the hearing and to stay the proceedings because mother's requested relief was "unlawful" (motion to vacate). The district court denied the motion to vacate.

¶ 6    In December 2023, the CFI submitted a report to the district court and the parties.

¶ 7    A few months later, father asked the district court to make preliminary findings that the CFI violated practice standards in Chief Justice Directive 04-08, Directive Concerning Court Appointment of Child and Family Investigators Pursuant to Section 14-10-116.5 (amended Aug. 2024) (CJD 04-08). CJD 04-08(V)(D)(1) provides that, "Prior to filing a complaint with the [State Court Administrator's Office], parties or their counsel of record shall request preliminary findings on the record from the judicial officer presiding over the current case that the CFI failed to comply with the court's order of appointment or has violated a practice standard set forth in this CJD." After considering father's contentions, the court determined that the CFI did not violate CJD 04-08.

¶ 8    Father then filed a motion seeking the recusal of the entire 5th Judicial District, including the presiding judge (recusal motion). He expressed concern that the CFI was married to a Summit County

Court Judge, alleging that the marriage created a conflict of interest, which prevented any 5th Judicial District judge from impartially reviewing the CFI's alleged violations or the assigned judge's order denying his request for preliminary findings. Father described the 5th Judicial District as an "extremely tight-knit group." He also reported that he had initiated investigations into the CFI and the presiding judge.

¶ 9 The district court deferred ruling on the recusal motion until the then-upcoming hearing in order to allow the parties time to present additional arguments addressing the motion. The court added that if the recusal motion was denied, the hearing would proceed as planned; if granted, the hearing would be continued and the case reassigned to another judge.

¶ 10 At the time of the hearing on the modification motion, M.K. and K.K. were sixteen years old and fifteen years old, respectively. According to the minute order, the district court orally denied father's recusal motion, citing the applicable law and explaining its reasoning. Following the hearing, the court issued a written order

- maintaining mother's status as the minor children's primary residential parent;

- allocating to father the first and third weekend of each month throughout the year;

- allowing the children to choose which parent they would spend time with during any fifth weekend that may fall in a given month;

- granting each party one uninterrupted week with the children; and

- continuing the holiday schedule.

¶ 11 The district court also encouraged father to travel to Summit County to be more involved in the children's lives.

¶ 12 Father now appeals.

## II. Missing Hearing Transcript

¶ 13 The transcript of the modification hearing is not in the record on appeal. As the appellant, it was father's responsibility to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal." C.A.R. 10(d)(3). The failure to include the transcript is significant because, in the absence of a complete record, we must presume that the missing portions of the record support the district court's findings and conclusions. *See In re Marriage of Beatty*, 2012 COA 71, ¶ 15

(where the record is incomplete, the appellate court must assume that the evidence supports the district court's findings); *see also In re Marriage of Dean*, 2017 COA 51, ¶ 13 ("Where the appellant fails to provide . . . a transcript, the [appellate] court must presume that the record supports the judgment."); *McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004) ("A party cannot overcome a deficiency in the record by statements in the briefs.").

## III. Recusal

¶ 14    To begin, father contends that the district court erred by denying his recusal motion. We disagree.

¶ 15    Upon the filing of the recusal motion, the district court reserved ruling on recusal pending further argument at the modification hearing. When the court deferred ruling, it indicated that the hearing would take place as scheduled if it denied the motion.

¶ 16    While the district court's written order after the hearing was silent on the recusal motion, the fact that the hearing proceeded implies an oral denial, which the minute order confirms. Father, however, has not provided the hearing transcript, which contained the details of the parties' arguments and the court's ruling. In the

absence of the transcript, we must presume that the court made all the necessary findings, that the record supports those findings, and that the denial was consistent with the controlling legal principles. *See Beatty,* ¶ 15; *see also Dean,* ¶ 13.

¶ 17    We reject father's related argument that the grant of mother's modification motion gave the "impression" that the district court "exacted revenge" against him for filing a grievance.  Adverse legal rulings do not constitute grounds for claiming prejudice or bias.  *In re Marriage of Hatton,* 160 P.3d 326, 330 (Colo. App. 2007) (adverse rulings, standing alone, do not constitute grounds for claiming bias or prejudice); *see People v. Schupper,* 124 P.3d 856, 859 (Colo. App. 2005) (the propriety of a district court's rulings, whether right or wrong, is not relevant in determining recusal issues), *aff'd* 157 P.3d 516 (Colo. 2007).

## IV.    Modification of Parenting Time

### A.    Endangerment Standard

¶ 18    As we understand father's argument, he contends that the district court erred by restricting his parenting time without applying the endangerment standard of section 14-10-129, C.R.S. 2024.  We disagree.

¶ 19    A district court has broad discretion when modifying parenting time, and we must exercise every presumption to uphold its decision. *In re Marriage of Dale*, 2025 COA 29, ¶ 7. The court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

¶ 20    We review de novo, however, whether the district court applied the proper legal standard. *Id.* at ¶ 8.

¶ 21    A district court may generally modify an order granting or denying parenting time rights whenever such modification would serve the children's best interests under section 14-10-124(1.5)(a), C.R.S. 2024. However, the court must not restrict parenting time rights unless it finds that the parenting time would endanger the children's physical health or significantly impair their emotional development. § 14-10-129(1)(b)(I).

¶ 22    Father seems to argue that the percentage reduction in his parenting time, as compared to the 2013 plan or the 2023 plan, is so substantial that it amounts to a restriction of his parenting time as a matter of law. A division of this court recently rejected this type of purely quantitative analysis to a change in parenting time. *See Dale,* ¶ 32 ("We conclude that a purely quantitative reduction in

a parent's parenting time is not a restriction . . . under section 14-10-129(1)(b)[I].")

¶ 23     There, the permanent orders gave the mother approximately 205 overnights a year with the child, while the father had about 160 overnights a year. *Id.* at ¶ 2. The father filed a motion to modify parenting time, arguing that his work schedule had changed and required him to relocate over 100 miles from the child's primary residence. *Id.* at ¶ 3. The district court held a hearing and considered the child's best interests under section 14-10-124(1.5)(a), ultimately reducing his parenting time to around 115 overnights a year. *Id.* at ¶¶ 4-5.

¶ 24     On appeal, the father in *Dale* argued that the modification was a restriction of his parenting time and that the court should have applied the endangerment standard. *Id.* at ¶ 6. As part of its analysis resolving the argument, the division distinguished between a qualitative restriction and a purely quantitative reduction in parenting time. *Id.* at ¶ 32. A qualitative change restricts parenting time rights, controlling "the manner, location, or environment in which the parent engages in parenting time, such as a requirement that parenting time be supervised, a prohibition of overnight visits

with a particular parent, or a limitation on the location where a parent may exercise parenting time." *Id.* Such a change necessitates the court's application of the endangerment standard under section 14-10-129(1)(b)(I). *See Dale,* ¶ 33.

¶ 25 On the other hand, a purely quantitative change — like a reduction in the number of overnights — does not equate to a restriction on parenting time. *See id.* at ¶ 32. The division in *Dale* concluded that because the modification was purely quantitative, the district court appropriately applied the best interests of the child standard rather than the endangerment standard. *See id.* at ¶ 33.

¶ 26 We agree with the rationale in *Dale.* As the modification here constituted a pure reduction of father's parenting time, without imposing any restrictions, the district court appropriately applied the best interests standard under section 14-10-124(1.5). *See Dale,* ¶¶ 32-33.

### B. Delegation of Parenting Time Decisions

¶ 27 The district court ordered that, in months containing a fifth weekend, the children could decide which parent they would visit. Father asserts that the court erred by impermissibly delegating

9

parenting time decisions to the children. *See In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1133 (Colo. 2010) (only the district court has the authority to allocate parenting time); *see also In re Marriage of Ohr*, 97 P.3d 354, 358 (Colo. App. 2004) (the district court may not delegate parenting time decisions to third parties). Although this is arguably an improper delegation of parenting time decisions, we conclude that any error was ultimately harmless under these specific circumstances. *See* C.A.R. 35(c) (appellate court may disregard an error not affecting the parties' substantial rights).

¶ 28　We first note that without a hearing transcript, our ability to fully review this issue is considerably hampered.

¶ 29　In any event, the limited record reflects that the district court's apparently erroneous delegation did not affect father's substantial rights. *See* C.A.R. 35(c). M.K. is currently five months shy of his eighteenth birthday, and K.K. is sixteen and a half years old. *See In re Marriage of Tibbetts*, 2018 COA 117, ¶¶ 9-21 (after a child turns eighteen years old, parenting time orders have no practical legal effect); *see also* § 13-22-101(1)(d), C.R.S. 2024 (A person eighteen years or older is deemed to be of full age to "make decisions in

regard to [their] own body . . . to the full extent allowed to any other adult person."). And M.K. held a part-time job on the weekends, and K.K. was heavily involved in competitive dance, which also included her primary social circle. Both were engaged in advanced academic coursework and extracurricular activities. The CFI reported that they felt "restricted by not being able to participate in the same activities as other kids their ages," and that the parties lived some distance apart. As well, our review of the calendar reveals that there are only three months containing five weekends before the close of 2025 and just four more until November of 2026, when K.K. will turn eighteen years old.

¶ 30 Moreover, father develops no argument explaining how his substantial rights were prejudiced by the district court's decision, and absent this necessary showing of prejudice, he has not established a sufficient basis to warrant reversal. *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (concluding that an alleged error, without a valid allegation of prejudice, is not grounds for reversal).

¶ 31 In all, we disregard any error associated with this issue as harmless. *See* C.A.R. 35(c).

## V. Motion to Vacate

¶ 32    Last, father contends that the district court erred by denying his motion to vacate. He argues that mother's requested modification was so significant that it required the court to apply the endangerment standard under section 14-10-129(2)(c) and that the court failed to tell either the parties or the CFI if that standard would apply at the hearing.

¶ 33    We will not address this issue now because father never specifically argued it in his motion to vacate. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (to preserve an issue for appeal, it must be presented in such a way that the district court has an opportunity to rule on it); *see also Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 26 (only specific arguments made to the district court are preserved for appeal). He argued only that mother's modification request, particularly to have the children decide their parenting time, was "unlawful" as it would "usurp judicial authority" and "place an undue psychological burden on [the] children," and therefore, the court should vacate the hearing or stay the proceedings. That is not the contention he

advances on appeal to challenge the court's denial of his motion to vacate.

## VI. Disposition

¶ 34    The order is affirmed.

JUDGE WELLING and JUDGE KUHN concur.